IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRISTOL TOWNSHIP | : | CIVIL ACTION |
| SCHOOL DISTRICT | : | |
| | : | |
| v. | : | |
| | : | |
| Z.B., | : | |
| by and through his parents, K.B. and R.B. | : | NO. 15-4604 |

MEMORANDUM

Dalzell, J.                                                         January 14, 2016

## I.     Introduction

We consider here the parties' cross-motions for judgment on the administrative record. Plaintiff Bristol Township School District (the "School District") brings this action under Section 615(i)(2) of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (the "IDEA"). The defendant is Z.B., a high school student, by and through K.B. and R.B., his parents. We have jurisdiction pursuant to 28 U.S.C. § 1331.

On March 17, 2015, an incident occurred between Z.B. and a teacher at Z.B.'s high school in the hallway between classes. The School District determined that the incident constituted an assault and scheduled both disciplinary proceedings and the manifestation determination to which Z.B. was entitled under the IDEA. When Z.B.'s parents disagreed with the result of the manifestation determination, they filed an expedited due process complaint, triggering an administrative hearing before a neutral party hearing officer. After that hearing, the Hearing Officer determined that Z.B.'s manifestation determination was deficient, ordered the School District to conduct a second manifestation determination, and awarded compensatory

education to Z.B. for the days in excess of ten days he had been excluded from school. The School District appealed by filing the complaint before us now.

The School District requests that we overturn the decision that the manifestation determination was deficient, reverse the order to conduct a second manifestation determination, and vacate the award of compensatory education. Z.B., by and through his parents, K.B. and R.B., requests that we uphold the Hearing Officer's decision and award of compensatory education, but that based on equitable principles, we preclude the School District from conducting a second manifestation determination or any further disciplinary proceedings.

For the reasons set forth below, we will affirm the Hearing Officer's decision and uphold the award of compensatory education, but we will deny Z.B.'s request for further equitable relief.

## II.    <u>Standard of Review</u>

The standard of review for state administrative proceedings under the IDEA is modified <u>de novo</u> review. <u>S.H. v. State-Operated Sch. Dist. of City of Newark</u>, 336 F.3d 260, 263 (3d Cir. 2003). We are to give "due weight" to the underlying state administrative proceedings. <u>Id.</u> at 269. Factual findings from the administrative proceedings are considered <u>prima facie</u> correct, and, if we decline to abide by those findings, we must explain why. <u>Id.</u> at 270. Thus, we are required to defer to those factual findings unless we can point to "contrary nontestimonial extrinsic evidence on the record." <u>Id.</u> at 270 & n.3. Put another way, although we must consider the administrative findings of fact, we are free to accept or reject them, but we must explain our rejection. <u>See, e.g.</u>, <u>Brendan K. ex rel. Lisa K. v. Easton Area Sch. Dist.</u>, 2007 WL 1160377, *6 (E.D. Pa. Apr. 16, 2007) (Rapoport, U.S.M.J.) (unreported). If the officer presiding over the administrative proceeding heard live testimony and found one witness's testimony more credible than another witness's contradictory testimony, we give that determination special weight. <u>Shore</u>

Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S., 381 F.3d 194, 199 (3d Cir. 2004).

Notwithstanding the due weight we give to the underlying proceedings under the modified de

novo review standard, we will make our own findings under a preponderance of the evidence

standard and grant such relief as we determine is appropriate. 20 U.S.C. § 1415(i)(2)(C); Shore

Reg'l High Sch. Bd. of Educ., 381 F.3d at 199.


III.    **Procedural History and Factual Background**

        A.      **Procedural History**

        The underlying incident in this case occurred on March 17, 2015. On March 31, 2015, the

School District held a manifestation determination hearing. On April 6, 2015, Z.B.'s parents filed

an expedited due process complaint regarding the manifestation determination. On April 8, 2015,

the School District conducted an informal hearing. The expedited due process hearing requested

by Z.B.'s parents was held on May 4, 2015. On May 18, 2015, the presiding Hearing Officer

issued her decision. On August 14, 2015, the School District appealed that decision by filing a

complaint in this Court.

        As the timing of these various events is relevant to the Hearing Officer's award of

compensatory education to Z.B., we recount the Hearing Officer's findings regarding those

logistics. After the March 17 incident, the School District composed a letter, dated the next day,

informing Z.B.'s parents that an informal hearing was scheduled for March 25, and that, if a

manifestation determination hearing was necessary, it would be conducted at the same time.

Hearing Officer's Decision, May 18, 2015 ("HOD") ¶ 36. But that letter was not mailed until

March 23, and Z.B.'s parents had not received it by the time they arrived at the scheduled March

25 hearing. HOD ¶¶ 36-37. Z.B.'s parents were told over the telephone on or about March 23

about the informal hearing, but they were not told about the possibility of a simultaneous

manifestation determination. Id. ¶ 36. When Z.B.'s parents arrived on March 25 for what they thought was an informal hearing and were informed that there would also be a manifestation determination, they did not want to proceed because they had insufficient notice. Id. ¶ 37. The School District postponed both the manifestation determination and the informal hearing, re-scheduling the manifestation determination to March 31, 2015 and the informal hearing to April 8, 2015.  Id. ¶ 38.

**B.     Factual History**

We consider the facts from the Hearing Officer's Decision ("HOD") of May 18, 2015.[1] We note where we have augmented the record from our own review of the transcript and other extrinsic documents.

**1.     The March 17, 2015 Incident and Mr. Harwick's Investigation**

Z.B. is a seventeen-year-old student who is eligible for special education services under the IDEA because of his Attention Deficit/Hyperactivity Disorder ("ADHD"), which is severe, and for which he receives therapy and medication. HOD ¶¶ 1-3. Z.B.'s teachers generally agree that Z.B. is easily distracted, sometimes off-task, and was not engaged in the learning process early in the year, but they also agree that he has good interpersonal skills and peer relationships and is generally good in the classroom, respectful of teachers, and compliant with academic demands. Id. ¶¶ 4, 9.

---

[1] The Hearing Officer, in keeping with privacy protocols, omitted Z.B.'s initials and age and used gender-neutral terms to refer to the other students involved in the March 17, 2015 incident. The parties elected to dispose of these anonymizing features in their papers, and for clarity, the Court will as well. We will also note the language used in the Hearing Officer's decision.

On March 17, 2015, Z.B. was roughhousing in the school hallway while transitioning between early afternoon classes. Id. ¶ 10. Z.B. was with his girlfriend, R., and another friend.[2] Id. Z.B. and the friend pretended to fight R., then pushed her against a locker and pretended to hit her. Id. A teacher, Daniel Donnelly,[3] who did not know Z.B. or R., ordered them to stop and told Z.B. to release his girlfriend. Id. ¶ 11. The friend left, but Z.B. did not stop the mock fighting until Mr. Donnelly told him a second time to stop. Id. Z.B. and R. began walking to class, and Z.B. had his arm around R.'s upper arms or shoulders as they walked. Id. Mr. Donnelly described this physical contact as a "headlock." Id. Mr. Donnelly again told Z.B. to let go of R., but Z.B. did not comply, and told Mr. Donnelly that they were dating. Id.

Mr. Donnelly then placed his right hand on Z.B.'s arm. Id. ¶ 12. Z.B. verbally objected and physically reacted to Mr. Donnelly's touch. Id. R. described the physical reaction as Z.B. pushing the teacher's hand away. Id. Z.B. described his reaction as pulling his arm down and to the right to get free of Mr. Donnelly's grasp. Id. Mr. Donnelly said he was not in physical contact with Z.B., but rather that Z.B. twisted Mr. Donnelly's extended arm. Id. Another teacher stepped between them. Id. R. pulled Z.B. away to continue walking to class and told him to calm down. Id. Z.B. walked R. to class and then went to his own class before a security guard arrived and escorted him to the assistant principal's office. Id.

Mr. Donnelly, describing the incident after the fact in a discipline referral form, wrote that Z.B. twisted his arm and stated "Let's go! Right now!" and he interpreted those words as an indication that Z.B. wanted to fight. Id. ¶ 14. Mr. Donnelly's written statement concluded by stating that several teachers arrived to move Z.B. and others along to their classes and the

---

[2] The Hearing Officer referred to these two students as the "dating partner" and "peer friend." HOD ¶ 10.

[3] The Hearing Officer referred to Mr. Donnelly as a "male teacher." HOD ¶ 11.

statement did not describe Z.B. having a threatening stance. Id. Testifying at the expedited due process hearing, however, Mr. Donnelly described Z.B. as backing up and squaring his shoulders. Id. Z.B. described the incident as ending with the two of them simply standing and looking at each other. Id.

Surveillance cameras in the hallway did not capture the incident, but they did show Mr. Donnelly, after the incident, approaching, and then waiting, outside Z.B.'s classroom. Id. ¶ 15. Mr. Donnelly spoke with several teachers outside that classroom before a security guard arrived and escorted Z.B. to the office. Id. He also spoke with the man accompanying the security guard. Id.

Before the security guard arrived, and still on the video, Mr. Donnelly and two female teachers appeared to be engaging in a physical reenactment of the incident. Id. ¶ 16. Mr. Donnelly initially on the video showed the two teachers a push upward and to the right of his right arm. Id. One of the teachers repeated that motion, and then engaged in a more forceful motion, twisting his arm down and to the left. Id. Several seconds later, Mr. Donnelly engaged in an apparent demonstration of the incident with the man accompanying the security guard to Z.B.'s classroom. Id. Mr. Donnelly's movement of his arm in this second reenactment was similar to the forceful twisting motion the other teacher had previously demonstrated. Id. R. observed the teachers talking about and reenacting the incident from her classroom. Id. ¶ 17.

Immediately after the incident, video surveillance captured Mr. Donnelly swinging his right arm freely and gesticulating with it. Id. ¶ 20. Mr. Donnelly did not come to work the day after the incident and his occupational health doctor diagnosed him with a shoulder sprain and prescribed physical therapy. Id. ¶ 18.  Two weeks after the incident, Mr. Donnelly arm-wrestled another student. Id. ¶ 20.

6

The security guard escorted Z.B. to the office of the assistant principal assigned to investigate the incident. Id. ¶ 22. The assistant principal, George Harwick, directed Z.B. to write an account of the incident. Id. ¶ 23. After asking some questions, Mr. Harwick made his own notations on the statement. Id.  Z.B. later testified that Mr. Harwick's notations did not reflect his words or their conversation. Transcript of the May 4, 2015 Expedited Due Process Hearing ("Tr.") at 58:2-59:10. Mr. Harwick suspended Z.B. for one day for refusing to follow an adult directive.  HOD ¶ 23.  At that point, another staff member entered the office and told the assistant principal that a teacher had been assaulted. Id. Mr. Harwick did not speak to Mr. Donnelly at that time, and Z.B. was sent home at the regular dismissal time at the end of the school day. Id. ¶ 24.

The next day, Mr. Harwick asked any staff member who had witnessed the incident to write a statement. Id.  ¶ 25. Laurie O'Donnell-Saturn, the teacher who stepped between Mr. Donnelly and Z.B., wrote that Mr. Donnelly was asking Z.B. to get to class and gently tapped Z.B.'s hand or arm. Id. She then described Z.B. as "all of the sudden" grabbing Mr. Donnelly's arm and twisting it, then going into a fighting stance. Id. Another teacher reported seeing Z.B. in the hallway with his arms around R., speaking to Mr. Donnelly, but the teacher did not hear what was said or witness anything else. Id. ¶ 26. Mr. Harwick received and reviewed the discipline report summary from Mr. Donnelly in lieu of taking another written statement. Id. ¶ 27.

After reviewing these teacher reports, Mr. Harwick did not believe much further investigation was needed, since he had statements from two adults who reported they had observed the incident. Id. ¶ 28. Mr. Harwick does not generally base his conclusions on students' statements, which he considers less credible than those from adults. Id. Still, on March 19, Mr. Harwick took R.'s written statement. Id. Mr. Harwick asked R. if Z.B. "put his hands" on Mr.

Donnelly and whether Z.B. took a fighting stance, and he testified that she answered yes to both questions. Id. ¶ 29. Mr. Harwick then handwrote that information on her statement. Id. R. denied answering those questions, denied that Z.B. took a fighting stance, and denied telling Mr. Harwick that Z.B. had ever done so. Id.

Mr. Harwick ultimately determined that Z.B. should be suspended from school for simple assault and not permitted to return until a hearing was held. Id. ¶ 30. As explained above, Z.B.'s manifestation determination and informal hearing were rescheduled to March 31 and April 8, 2015, respectively. Id. ¶ 38.  We will now discuss the March 31 manifestation determination, the April 8 informal hearing, and the May 4 expedited due process hearing leading to the Hearing Officer's Decision.

### 2.    The Manifestation Determination

The March 31, 2015 manifestation determination hearing included Z.B., his parents, a school psychologist, two teachers, and Dr. Catherine Newsham, the special education supervisor assigned to conduct the review. Id. ¶ 40.

To prepare for the manifestation determination Dr. Newsham, as she usually does, reviewed Z.B.'s computerized records file, including attendance, disciplinary reports, and other information in order to get a picture "of the child as a whole." Id. In the course of reviewing those records, Dr. Newsham filled out portions of a worksheet. Transcript of the May 4, 2015 Expedited Due Process Hearing ("Tr.") at 230:1-9; HOD ¶ 43.

The worksheet, which structured the manifestation determination, recorded that the meeting was being held because of Z.B.'s March 17 discipline referral for simple assault and refusal to follow an administrator's directive. Joint Ex. 20 (Preliminary Manifestation Determination Worksheet) at 1. The worksheet included a section labeled "Description of

behavior subject to disciplinary action," with an instruction to "[i]nclude setting events, antecedents, details of the behavioral incident, and immediate consequences. List witnesses and include all relevant details." Joint Ex. 20 at 2; HOD ¶ 41. Underneath that section, Dr. Newsham's pre-typed description indicated only that Z.B. was suspended for "assault" and "refused directive" and that the teacher "sustained injuries." Joint Ex. 20 at 2; HOD ¶ 41.

The worksheet included questions regarding whether the conduct in question was (1) caused by the student's disability or had a direct and substantial relationship to the student's disability, or (2) the direct result of the failure to implement the Individualized Education Program ("IEP"). See Joint Ex. 20 at 7-8. In her pre-printed comments Dr. Newsham checked "No" to the question about the failure to implement the IEP and also checked "No" for the ultimate determination that the behavior subject to disciplinary action was not a manifestation of the student's disability. Id. at 8. An earlier question regarding the manifestation of Z.B.'s disability was left blank, but filled out as "no" during the meeting. Id. at 7. The manifestation determination team typically does not determine the facts of the incident for which an eligible student is subject to discipline, and so did not permit discussion of the March 17 incident at the manifestation determination. HOD ¶ 42.

At the manifestation determination meeting, Dr. Newsham reviewed the worksheet in detail and made some handwritten changes, noting that Z.B.'s medication had been adjusted within the last month. Id. ¶ 44; see also Joint Ex. 21 (Final Manifestation Determination Worksheet). Z.B.'s mother later clarified that she had stated that Z.B. had been switched from the brand name to a generic form of his secondary medication. HOD ¶ 44.

Other than Z.B. and his parents, those present at the meeting agreed that the conduct in question was not a manifestation of Z.B.'s disability because physical aggression is not a

symptom of ADHD, no one had observed aggressive behavior from Z.B. during that school year, and the behavior in question -- aggressive assault -- was not typical of him. Id. ¶ 49. Dr. Newsham stated that Z.B.'s mother agreed that the conduct was not a manifestation of Z.B.'s disability, but R.B. did not check the box indicating either agreement or disagreement with the team's determination, and instead wrote next to her signature "I feel that some portions of this were due to [Z.B.'s] Disability." Id. ¶ 50. Dr. Newsham acknowledged that hyperactivity and impulsivity are symptoms of ADHD and failing to follow directions could be related to those traits. Id. ¶ 51.

The manifestation determination team did not discuss whether Z.B.'s disability included impaired judgment or reasoning, but the team's consensus, including Z.B.'s parents, was that Z.B. could generally identify appropriate and inappropriate behaviors. Id. ¶ 52. Dr. Newsham believed that Z.B.'s parents agreed that the behavior in question was not a manifestation of Z.B.'s disability because when asked directly, they agreed that Z.B. could make proper behavior choices. Id.

After the manifestation determination team concluded that Z.B.'s conduct during the March 17 incident was not the result of his disability or the failure to implement his IEP, on April 6, 2015 Z.B. and his parents filed an expedited due process complaint against the School District.

### 3.      The Informal Hearing

Z.B. and his mother attended the April 8 informal hearing, along with Mr. Harwick and the special education director, Lou de Fonteny. HOD ¶ 53. Z.B. spoke at the informal hearing. Id. Mr. de Fonteny, in considering whether to refer Z.B. for a School Board hearing, drew facts

from the two teacher statements provided to Mr. Harwick, the disciplinary incident report, and what Mr. Harwick said about what Mr. Donnelly told him about the incident. Id.

Z.B.'s mother, R.B., presented no evidence at the April 8 hearing. Id. ¶ 54. Immediately after the incident, R.B. had asked Z.B. and R. to write separate statements, but she did not bring those to the hearing. Id. Instead, she emailed the statements to Mr. de Fonteny after the informal hearing. Id. Mr. de Fonteny reviewed the statements, but they did not affect his decision to proceed with a School Board hearing because allegedly a teacher had been injured during the incident. Id. Mr. de Fonteny learned of Mr. Donnelly's injury from Mr. Harwick and did not review any of Mr. Donnelly's medical records prior to the informal hearing. Id. ¶ 55. At the end of the informal hearing, Mr. de Fonteny told Z.B.'s mother that he would be referring Z.B. to the School Board for an expulsion hearing, and offered her the option of accepting homebound instruction pending further proceedings or having Z.B. return to his current educational placement. Id. ¶ 56. Z.B.'s mother first elected for homebound instruction, but later changed her mind and asked that Z.B. return to school. Id.

Z.B. was suspended and not permitted to attend school for fifteen days -- March 18, 19, 20, 23, 24, 25, 26, 27, 30, 31 and April 1, 2, 7, 8, and 9, 2015. Id. ¶ 57. School was not in session on April 3 or 6. Id. Z.B. returned on April 10, 2015 and has been attending school since that date with no further disciplinary incidents. Id. ¶ 58.

### 4.    The Hearing Officer's Decision

After Z.B., by and through his parents, filed an expedited due process complaint, a hearing was held on May 4, 2015, and the Hearing Officer rendered her decision on May 18, 2015. The Hearing Officer found that "the District's view of the incident and Student's culpability for assault on a teacher substantially and negatively affected the manifestation

determination process." HOD at 14-15. The Hearing Officer elaborated that "[t]he record in this case strongly suggests that from the moment the assistant principal who conducted the investigation into the March 17 incident received information that a teacher had been assaulted, the school administration was determined to have Student expelled, regardless of the circumstances." Id. at 14. The Hearing Officer based this conclusion on the "cursory investigation of the incident" and "complete disregard of any facts contrary to the conclusion that Student assaulted and injured a teacher." Id.

The Hearing Officer found that Z.B.'s manifestation determination could not have considered all relevant circumstances because "no one from the District was willing to determine the facts and circumstances relating to the March 17 incident, [Z.B.'s] behavior during the incident and why the behavior may have occurred." Id. at 15. Specifically, the Hearing Officer found fault with the conclusion that the behavior in question was not a manifestation of Z.B.'s disability "based on the broad, general determination that [Z.B.'s] conduct in this case did not fit within the general characteristics/usual symptoms of ADHD." Id. The Hearing Officer found this reasoning insufficient since IDEA standards and associated regulations do not limit a manifestation determination to such considerations of typicality but rather require "specific consideration" of whether the behavior arose from, or was substantially related to, the particular student's disability, that is, "whether the violation is related to how that student manifests the disability." Id. at 16 (emphasis in original).

The Hearing Officer found evidence in the record "sufficient to suggest, although not to conclusively establish," that Z.B. may exhibit more uninhibited behaviors, including aggression, when his ADHD is not well-controlled by medication. Id. The Hearing Officer also found that "it was a lapse of proper procedures" not to consider whether the decreasing effects of Z.B.'s

medication toward the end of the school day affected his behavior during the incident and expressed concern that the manifestation determination did not give Z.B.'s parents "a real opportunity to make that point." Id. at 16-17.

The Hearing Officer analyzed how the deficient manifestation determination negatively affected Z.B.'s due process rights. First, the Hearing Officer noted that the School District's policy of combining the informal hearing with the manifestation determination review was meant to provide the manifestation determination team with the relevant facts for its review. Id. Since Z.B.'s manifestation determination review preceded the informal hearing, the review was based "only on the conclusion that [Z.B.] committed a violent act, resulting in a teacher injury." Id. at 20.

Second, the Hearing Officer found that the outcome of the informal hearing amounted to a "rubber stamp" of Mr. Harwick's conclusion that Z.B. assaulted Mr. Donnelly. Id. As a result, the Hearing Officer concluded that the School District's failure to follow its own procedures "caused no additional or greater substantive effect on [the] manifestation determination process itself -- the facts available to the review team would have been identical had the informal hearing been conducted before or simultaneously with the manifestation determination." Id. But because the Hearing Officer found that the record was "insufficient to conclude with confidence that the outcome of the manifestation determination was wrong," she ordered the School District to conduct a second manifestation determination hearing. Id.

The Hearing Officer also found that the School District's decision to postpone the informal hearing more than ten consecutive school days after Z.B. was suspended for the March 17 incident, and to continue to exclude him from school until the informal hearing was conducted, violated the IDEA's requirements relating to a disciplinary change of placement,

since -- based on the defective manifestation determination review -- there had not yet been a proper determination with respect to whether the conduct in question was a manifestation of Z.B.'s disability. Id. at 21. Z.B. was excluded from school for at least fourteen consecutive days between March 19 and April 10. Id. Under IDEA regulations, ten consecutive school days constitutes a change of placement. Id. The Hearing Officer found that the School District failed to conduct a substantively proper manifestation determination, nullifying the outcome, and that it violated its own disciplinary policy providing for an automatic ten day suspension for aggravated assault of employees. Id. The Hearing Officer concluded that the School District's delay in conducting the informal hearing had the effect of treating Z.B. less favorably than non-disabled students "by scheduling the informal hearing a week after the manifestation determination review." Id. at 21-22. The Hearing Officer therefore awarded Z.B. compensatory education for the number of school days for which he received no educational services due to his disciplinary exclusion from school in excess of ten consecutive school days. Id. at 22.

## IV.   Discussion[4]

The IDEA provides procedural safeguards for children with disabilities and their parents with respect to the provision of a free, appropriate public education. 20 U.S.C. § 1415(a). One such procedural safeguard is the opportunity for any party to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child" or set forth any alleged violation. 20 U.S.C. §1415(b)(6)(A)-(B). Another set of procedural safeguards applies when school personnel decide to order a change in placement for a child with a disability who violates a code

---

[4] Neither party disagrees with the manifestation determination team's conclusion that Z.B.'s conduct was not the result of any failure to implement his IEP, and so we do not address Z.B.'s IEP in our discussion.

of student conduct. See 20 U.S.C. § 1415(k). In such circumstances, school personnel may remove a child with a disability from his current placement to an appropriate interim alternative educational setting, another school setting, or suspend him for not more than ten school days, to the extent such alternatives are applied to children without disabilities. 20 U.S.C. § 1415(k)(1)(B). If school personnel seek to order a change in placement that would exceed ten school days, and the behavior that gave rise to the violation of the school code is determined not to be a manifestation of the child's disability, then relevant disciplinary procedures applicable to children without disabilities may be applied to the child with the disability in the same manner, and for the same duration, as they would be applied to the child without disabilities -- with some statutory exceptions. 20 U.S.C. § 1415(k)(1)(C).

Importantly, the IDEA provides for a "manifestation determination" within ten school days of any decision to change the placement of a child with a disability because of a violation of a code of student conduct. 20 U.S.C. § 1415(k)(1)(E). As part of the manifestation determination, the local educational agency, the parents, and relevant members of the child's IEP team must "review all relevant information in the student's file, including the child's IEP, any teacher observations, and any relevant information provided by the parents" to determine if the conduct in question was (1) caused by, or had a direct and substantial relationship to, the child's disability, or (2) the direct result of the local educational agency's failure to implement the child's IEP. 20 U.S.C. § 1415(k)(1)(E)(i).

If the parents of a child with a disability disagree with any decision regarding placement or with the manifestation determination, they may request a hearing, as may the local educational agency when it believes that maintaining a child's current placement is likely to result in injury to the child or to others. 20 U.S.C. § 1415(k)(3)(A). Such hearings are expedited and must (1)

occur within twenty school days of the date the hearing is requested, and (2) result in a determination within ten school days after the hearing. 20 U.S.C. § 1415(k)(4)(B).

Yet more rules govern the hearing itself. <u>See</u> 20 U.S.C. § 1415(i). Decisions made in hearings conducted pursuant to 20 U.S.C. § 1415(f) or (k) are final, except that any party may appeal such a decision under the provisions of 20 U.S.C. § 1415(g) and paragraph (2). 20 U.S.C. § 1415(i)(1)(A). But any party aggrieved by the findings and decision made under subsections (f) or (k) who does not have a right to appeal under subsection (g) has the right to bring a civil action with respect to the complaint in any state court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2)(A).

In any action brought under 20 U.S.C. § 1415(i), the court receives the records of the administrative proceedings, hears additional evidence if requested by a party, and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The IDEA also provides discretion for the Court to award reasonable attorney's fees to the prevailing party. 20 U.S.C. § 1415(i)(3)(B).

### A.     The Parties' Cross-Motions For Judgment On The Administrative Record

The School District asks that we reverse the Hearing Officer's order that it conduct a thorough review of Z.B.'s behavior, rule that the manifestation determination process may rely on the facts of the March 17, 2015 incident as established by Mr. Harwick's investigation, reverse the Hearing Officer's order that it specifically consider whether the effects of Z.B.'s medication affected his ability to exercise appropriate judgment and control at the time of the incident, reverse the award of full days of compensatory education for every school day over ten

consecutive school days that Z.B. was suspended, deny Z.B.'s parents request for attorneys' fees and costs, and enter judgment in its favor. Compl. at unnumbered p. 11.

Z.B., by and through his parents, moves for judgment in his favor on the administrative record. He requests that we deny the School District's requested relief, dismiss its complaint with prejudice, affirm the Hearing Officer's determination that the School District failed to conduct a proper manifestation review, affirm the Hearing Officer's determination that Z.B. is entitled to an award of compensatory education, reverse the Hearing Officer's order to conduct another manifestation determination or , in the alternative, order that no further manifestation determination or disciplinary proceeding may be held on this matter, and award Z.B. costs and attorney's fees. Def. Ans. at 12-13.

Although the School District lists seven objections to the Hearing Officer's decision,[5] essentially it argues that the Hearing Officer erred (1) by improperly commingling an evaluation of standard disciplinary procedures with her review of the manifestation determination and (2) awarding Z.B. compensatory education. Pl. Mem. at unnumbered pp. 9, 16. Z.B. argues that the Hearing Officer correctly determined that the manifestation determination review was improper and that he is entitled to compensatory education. Def. Mem. at 18, 25.

We have reviewed the Hearing Officer's decision, the transcript of the expedited due process hearing, and all documents submitted by the parties, including various witness

---

[5] The School District argues that the Hearing Officer: (1) erred in finding that it did not conduct a proper manifestation determination review, (2) incorrectly interjected the disciplinary process into her evaluation of the manifestation determination, (3) erred in ordering the manifestation team to usurp the School Board's authority, (4) erred in creating a conflict between its disciplinary process under the School Code and Pennsylvania Code and the manifestation determination under the IDEA, (5) erred in finding that it failed to consider the specific circumstances relating to Z.B.'s disability and the circumstances of the incident, (6) incorrectly determined that it violated the IDEA by postponing the date of the informal hearing and said delay had the effect of treating Z.B. less favorably than non-disabled students, and (7) erred by awarding compensatory education for Z.B. Pl. Mem. at unnumbered p. 7.

statements and surveillance footage. We must first consider whether (1) the Hearing Officer's finding that the manifestation determination was deficient is correct, (2) the Hearing Officer improperly interjected the disciplinary process into her evaluation of the manifestation determination, (3) the Hearing Officer's order that the School District conduct a second manifestation determination was proper, and (4) the Hearing Officer's award of compensatory education was proper. We then consider the appropriate remedy and whether we should award attorney's fees.

**1.      Whether The Hearing Officer's Finding That The <u>Manifestation Determination Review Was Deficient Is Correct</u>**

Giving due weight to the Hearing Officer's factual findings under the modified <u>de</u> <u>novo</u> standard appropriate to our review of an administrative hearing, we find by a preponderance of the evidence that the Hearing Officer did not err when she found that the School District did not conduct a proper manifestation determination review.

As the Hearing Officer noted, the manifestation determination review team considered Z.B.'s behavior in light of what is typical for students with ADHD rather than giving "specific consideration" to whether the behavior arose from, or was substantially related to, Z.B.'s particular disability and manifestation thereof. HOD at 15-16.

We agree with the Hearing Officer's findings after reviewing the transcript of the hearing, specifically testimony from Dr. Newsham and Z.B.'s mother, R.B., and the manifestation determination worksheets. <u>See</u> Ex. 3 (Transcript of the May 4, 2015 Expedited Due Process Hearing) ("Tr.") and Joint Exs. 20-21 (Preliminary and Final Manifestation Determination Worksheets).

Dr. Newsham prepared documents for the manifestation determination and led the meeting. Tr. 220:8-10, 226:5-229:4.  She testified that while she filled out portions of the worksheet ahead of time, there was no predetermined outcome for the review because "everybody has the opportunity to say whether they agree or disagree." Id. at 230:1-9. See also id. at 235:14-24 (Dr. Newsham affirming that she invited the team to supplement the document or disagree with anything she said).  To be sure, Dr. Newsham noted R.B.'s input on the final manifestation determination worksheet. Id. at 243:18-21.

But before the manifestation determination review even started, Dr. Newsham had answered the two key questions of the determination:  Whether the conduct in question was the direct result of a failure to implement the IEP, or whether it was a manifestation of the student's disability.   Based solely on her review of the documents, Dr. Newsham answered "no" to both questions on the worksheet before the meeting. Id. at 260:2-12, 261:23-25 (emphasis added).

Dr. Newsham explained, "I actually do one of these around the table and say I've checked off this block that it is not a manifestation. Does anyone have any concerns with that? Does anyone have anything they'd like me to add or subtract at this point?" Id. at 275:8-13. But R.B. testified that it was not clear when Dr. Newsham asked them during the manifestation determination whether they thought the conduct in question was caused by or had a direct and substantial relationship to Z.B.'s disability. Id. at 392:9-393:20. R.B. also testified that she disagreed with the manifestation determination because "I felt the things that had caused the beginning parts were due to his disability. And they told us that we weren't really supposed to be talking about whether the teacher grabbed [Z.B.] or [Z.B.] grabbed the teacher. So that's why I was trying to say I felt that some of the portions were due to the disability." Id. at 395:5-19. R.B. clearly testified that Z.B.'s horseplay and failure to immediately desist when asked were related

to his ADHD, but the entire manifestation determination review was confusing because "they actually explained again that we were talking about his behaviors, not what had happened at that point, which still honestly was confusing to me." Id. at 396:1-5, 396:25-397:4.

Dr. Newsham protested during the hearing that she included the parents in the conversation at the manifestation determination review, read her findings aloud, and gave the team an opportunity to object. Id. at 260:21-261:25. But, ultimately, Dr. Newsham convened the manifestation determination with a prefabricated document that encompassed solely her views and conclusions and then asked if anyone objected, which is materially different than, say, for efficiency, filling in background information gathered ahead of time in order to facilitate meaningful discussion about the appropriate answers to the two crucial questions at the heart of the manifestation determination, questions that Dr. Newsham had already answered "no" to.

The manifestation determination team also did not consider any specifics regarding the incident in question, or specifics about Z.B.'s behavior as a manifestation of his disability. Although the worksheet provided a space for a detailed description of the incident and the behavior in question, all the team considered was that Z.B. had engaged in "aggressive assault behavior." Id. at 251:16-18. Dr. Newsham candidly explained, "To be quite honest, we looked at it more from a global picture. We didn't [dive] into the specifics. We weren't looking at what occurred during that specific incident. We were looking at does [Z.B.'s] disability have anything to do with aggressive behaviors? And the team absolutely did not feel that." Id. at 280:11-18.

This failure to consider the specific circumstances of the incident and the alleged conduct renders the manifestation determination deficient because it precluded any meaningful discussion of whether Z.B.'s behavior was a manifestation of his disability.

We therefore find by a preponderance of the evidence that the Hearing Officer did not err when she found that the manifestation determination was deficient for failing to adequately consider the incident in question or Z.B.'s behavior being a manifestation of his disability.

### 2. Whether The Hearing Officer Improperly Interjected The Disciplinary Process Into Her Evaluation Of The Manifestation Determination Review

In the course of rendering her decision that the manifestation determination contained significant procedural flaws, the Hearing Officer noted several deficiencies in the "cursory investigation of the incident by the assistant principal and the complete disregard of any facts contrary to the conclusion that [Z.B.] assaulted and injured a teacher." HOD at 14.  Although the Hearing Officer noted that these deficiencies were not "directly at issue in the context of a special education due process hearing reviewing the District's manifestation determination," she continued that the District's "view of the incident…substantially and negatively affected the manifestation determination process." Id.

The School District argues, in essence, that the Hearing Officer overstepped the bounds of her authority by addressing what she felt was an unfair and prejudiced investigation by Mr. Harwick. But the Hearing Officer's opinion makes clear that her concern was the effect of the School District's position on the manifestation determination: "There is no question that [Z.B.] initially refused to comply with the teacher's directive and physically reacted to the teacher's touch. The extent and nature of the reaction, however, may be relevant to whether the conduct was related to [Z.B.'s] disability." Id. at 19.

After reviewing the factual record, we disagree with the School District's characterization of the Hearing Officer's discussion with respect to the disciplinary process. As explained above, we agree with the Hearing Officer that the manifestation determination team could not have

meaningfully addressed whether the conduct in question was a manifestation of Z.B.'s disability without more information about the incident in question. The School District's barebones conclusion that Z.B. had assaulted a teacher -- without any details regarding the horseplay and subsequent failure to desist -- did not provide the manifestation determination team with the relevant information needed to conduct a thorough review. This omission was particularly prejudicial to Z.B. because Z.B.'s ADHD may sometimes manifest as a failure to listen to instructions or immediately obey teacher directives.

The Hearing Officer evaluated the manifestation determination by considering what the team <u>actually</u> considered versus the universe of facts they <u>might</u> have considered, and, in the course of doing so, noted that the School District's process for finding and presenting facts was problematic. While the School District might take umbrage at the Hearing Officer's harsh evaluation of Mr. Harwick's investigatory methods and prejudices against student statements, those comments do not undermine the Hearing Officer's more salient point that the manifestation determination team did not have enough specific information about the conduct in question to conduct a manifestation determination comporting with due process under the IDEA.

We therefore find that the Hearing Officer did not improperly interject the disciplinary process into her review of the manifestation determination. Her comments and evaluation of Mr. Harwick's investigation were made in the process of explaining why the manifestation determination was deficient, and while bluntly critical, were not outside the bounds of her authority.

3.    **Whether The Hearing Officer's Order That The School District Conduct A Second Manifestation Determination Was Proper**

The School District argues that the Hearing Officer "imposed an additional and unwarranted requirement upon the Manifestation Determination Team that the Team serve as a separate fact finder with regard [to] the District's underlying findings of misconduct." Pl. Mem. at unnumbered p. 15. Z.B. argues that since the Hearing Officer had the authority to overturn the manifestation determination entirely, see 34 C.F.R. § 300.532(b)(2)(i), the Hearing Officer also had equitable authority to require the School District to conduct a proper manifestation determination. Def. Mem. at 27.

The Hearing Officer, finding that the manifestation determination had not taken into consideration all of the relevant circumstances surrounding the incident -- thereby precluding meaningful review of whether the conduct in question was a result of Z.B.'s disability -- ordered the School District to try again, this time with more facts. This did not require the manifestation determination team to act as a separate fact-finder.  Notwithstanding the Hearing Officer's critical comments about Mr. Harwick's investigation, the Hearing Officer did not order the team to re-investigate, but only to consider the universe of facts Mr. Harwick had assembled regarding the incident in question.

The Hearing Officer's order only required that the School District provide Z.B. with the due process owed to students covered under the IDEA in a fair and meaningful manner before disciplinary proceedings continued before the School Board. Ordering a second manifestation determination does not usurp the School Board's authority to discipline Z.B.   But, the School Board can only discipline him after a proper manifestation determination review determines that disciplining him would not violate his rights under the IDEA.  The Hearing Officer acted within

the bounds of her authority when she required the School District to repeat the manifestation

determination.

### 4.    Whether The Hearing Officer's Award Of Compensatory Education Was Proper

The School District argues that the Hearing Officer erred by awarding Z.B. compensatory

education because the School District rescheduled the manifestation determination review and

informal hearing at the parents' request and it did not treat Z.B. less favorably than a non-

disabled student by conducting the manifestation determination before the informal hearing. Pl.

Mem. at unnumbered pp. 17-18. Z.B. argues that he was excluded from school for more than ten

consecutive days without a hearing and that he should have been permitted to attend school after

his parents filed the expedited due process complaint on April 6, 2015. Def. Mem. at 26.

For purposes of the IDEA, a change of placement occurs when a child with a disability is

removed from his current educational placement for more than ten consecutive school days. 34

C.F.R. § 300.536(a)(1). A child with a disability who violates a code of student conduct cannot

be suspended or otherwise excluded from his current placement for more than ten consecutive

school days. 34 C.F.R. § 300.530(b)(1). Under the Pennsylvania Administrative Code,

suspensions are exclusions from school for a period from one to ten consecutive school days,

after which point the exclusion becomes an expulsion. 22 Pa. Code § 12.6(b)(1)-(2). An

expulsion requires a formal hearing, and, during the period prior to the decision of the governing

board in an expulsion case, the student is supposed to be placed in his normal class unless his

presence presents a threat to the health, safety, or welfare of others. 22 Pa. Code § 12.8(b); 22 Pa.

Code § 12.6(c)-(d).

As we have found that the Hearing Officer correctly determined that the manifestation determination was improper, we agree with her findings that Z.B.'s exclusion from school until the informal hearing violated the IDEA and that Z.B. is entitled to compensatory education for every day over ten days that he was excluded from school. HOD at 21.

The underlying incident occurred on March 17, 2015. The School District failed to provide timely written notice to Z.B.'s parents of the scheduled March 25, 2015 manifestation determination and informal hearing and did not ameliorate that failure by then calling Z.B.'s parents and giving them incomplete information about the hearing. Nor has the School District provided a sufficient explanation for its decision to reschedule the informal hearing more than a week after the rescheduled manifestation determination review. Further, Z.B. was treated less favorably than a non-disabled student by this delay. While a non-disabled student is not entitled to a manifestation determination, all students are entitled to timely due process from the School District.  Z.B.'s informal hearing was delayed by the School District because of the School District's failure to provide timely notice and of the School District's decision to then reschedule the informal hearing to take place after the manifestation determination. We will therefore affirm the Hearing Officer's award of compensatory education.

## B.    **Remedies**

As we have found no errors in the Hearing Officer's factual findings, her order to the School District to conduct another manifestation determination, and the award of compensatory education, we next consider Z.B.'s argument that equitable principles should preclude the School District from actually conducting a second manifestation determination or proceeding with any further discipline against him. As Z.B. and his parents are the prevailing party, we also consider whether to award attorney's fees.

1.     **Whether To Require The School District To
Conduct A Second Manifestation Determination
<u>Or Permit It To Proceed With Further Discipline</u>**

This entire case stems from a brief, albeit contested, incident on March 17, 2015 --

almost ten months ago. Since then, Z.B. has been uneventfully attending the same high school.

Our mandate in this case is to "grant such relief as the court determines is appropriate." 20

U.S.C. § 1415(i)(2)(C)(iii); 34 C.F.R. § 300.516(c)(3).

Our Court of Appeals has broadly interpreted the term "appropriate." <u>Bucks Cnty. Dep't

of Mental Health/Mental Retardation v. Pennsylvania</u>, 379 F.3d 61, 67 (3d Cir. 2004)

(elaborating that there is nothing in the text or legislative history to indicate a limit on what is

appropriate relief). Thus, the only limit is that the relief be "appropriate in light of the purposes

of the [IDEA]." <u>Ferren C. v. School Dist. of Phila.</u>, 612 F.3d 712, 717 (3d Cir. 2010) (citing

<u>Burlington v. Massachusetts</u>, 471 U.S. 359, 369 (1985)). Usually, courts grant relief in the form

of compensatory education. <u>Id.</u> When fashioning discretionary equitable relief under the IDEA,

we must consider "all relevant factors." <u>Id.</u> at 718 (quoting <u>Florence Cnty. Sch. Dist. v. Carter</u>,

510 U.S. 7, 16 (1993)). The IDEA's relevant purposes for this case are ensuring that all children

with disabilities have available to them a free appropriate public education and ensuring that the

rights of children with disabilities and parents of such children are protected. 20 U.S.C. §

1400(d)(1)(A)-(B).

Z.B. argues that the equitable principle of laches supports his request that we preclude the

School District from conducting a second manifestation determination or engaging in further

disciplinary action. Def. Mem. at 28-29. To effectively assert laches as a defensive bar, Z.B.

must show (1) inexcusable delay in bringing the action and (2) prejudice. <u>In re Mushroom

Transp. Co., Inc.</u>, 382 F.3d 325, 327 (3d Cir. 2004). Prejudice requires showing that the delay

caused "a disadvantage in asserting and establishing a claimed right or defense." Id. at 337

(citing United States Fire Ins. Co. v. Asbestosspray, Inc., 182 F.3d 201, 208 (3d Cir. 1999)). Z.B.

argues that the School District could have conducted either a second manifestation determination

or a formal hearing, even while pursuing its appeal in federal court, but instead it elected to delay

both proceedings and wait until the end of the three month statutory appeal period to file this

case. Def. Mem. at 29. The School District argues that any delay in conducting the manifestation

determination and formal hearing falls on Z.B. because "any potential impact or alleged

diminishment on Defendants' ability to produce evidence ultimately flows from Defendants'

initial decision to file an administrative appeal which generated a flawed legal decision from the

Hearing Officer which the District was compelled to appeal." Pl. Opp. at 17.

      Z.B. produces no legal authority holding that laches may apply to a party who brings an

action within the statutorily provided-for appeal period, but we also consider whether we can

apply the concept of laches to a school disciplinary proceeding. As we have upheld the Hearing

Officer's decision regarding the deficiency of the original manifestation determination,

upholding the Hearing Officer's order to conduct a second manifestation determination would

expose Z.B. to the possibility that, should the second manifestation determination also conclude

that his conduct on March 17, 2015 was not the result of his disability, he could be subject to

formal discipline and possibly expulsion for conduct that occurred almost a year ago.

      The Pennsylvania Administrative Code contemplates that formal hearings (which are

required for possible expulsions) should be held within fifteen days of the notification of

charges, but such hearing may be delayed while court or other administrative proceedings are

pending due to a student invoking his rights under the IDEA, in which case the hearing must be

held as soon as reasonably possible. 22 Pa. Code § 12.8(b)(9)(ii). Z.B. first invoked his rights

under the IDEA when his parents filed an expedited due process complaint because they disagreed with the manifestation determination.  That complaint led to a hearing, culminating in the Hearing Officer's decision, which the School District then timely appealed. After Z.B. had vindicated his rights under the IDEA through the expedited due process hearing, he, through his attorney, indicated that he was prepared to schedule both a second manifestation determination and a formal hearing before the School Board. See Def. Mem. Exs. 1-2. The School District, appealing the Hearing Officer's decision, elected not to proceed with another manifestation determination or pursue any disciplinary proceedings in the meantime.

This delay, while objectionable to Z.B., was not inexcusable. The School District believed that the Hearing Officer's decision exceeded her authority and was substantively incorrect, and so they appealed her decision. It is not the Court's province to opine on the advisability of a three-month period to file such an appeal, let alone comment on a party's decision regarding when in that period they are prepared to proceed to court.  As noted above, while this delay is not inexcusable under the doctrine of laches, Z.B. is right to note the seeming unfairness of having to defend his rights under the IDEA for a second time -- now in federal court -- only to face the prospect of possible disciplinary proceedings, almost a year after the incident in question, after a second manifestation determination is held.

But the IDEA does not insulate children with disabilities from school discipline. Rather, the IDEA guarantees them certain due process rights to ensure that they are not unfairly disciplined for violating codes of student conduct when their behavior is caused by, or substantially related to, their disability. Z.B.'s rights, though initially violated via the first deficient manifestation determination, have been twice vindicated through the processes set forth under the IDEA -- first by the Hearing Officer and now by this Court. Z.B.'s vindication of his

rights under the IDEA, however, does not insulate him from all school disciplinary proceedings -- merely those that are predicated on behavior related to his disability. Thus, while he has prevailed here, he is still subject to the School District's normal disciplinary procedures unless a proper manifestation determination review determines that his conduct was disability-related.

We are not unmoved by the seeming unfairness of the possibility that the School District might try to expel Z.B. for conduct that took place almost a year ago, especially in light of his willingness as early as May of 2015 to proceed with a second manifestation determination and any subsequent disciplinary proceedings that might have arisen as a result of such determination. We are also, like the Hearing Officer, troubled by the School District's problematic investigation of this incident.[6] But, it is inconsistent with the purposes of the IDEA to grant Z.B. the equitable relief he seeks -- in effect an injunction against the School District from instituting further disciplinary proceedings against him for the March 17, 2015 incident. The issue before us is the Hearing Officer's decision with respect to Z.B.'s rights under the IDEA, not the School District's investigatory methods or disciplinary procedures.

We will therefore deny Z.B.'s request for equitable relief from undergoing a second manifestation determination and from any subsequent disciplinary proceedings that may arise as

---

[6] Our independent review of the entire record strongly suggests that the investigation of the incident was problematic and prejudiced against Z.B. Mr. Harwick openly admitted to discounting students' statements as a matter of course. Tr. 334:5-10. Both R. and Z.B., who gave statements to Mr. Harwick, testified that his handwritten annotations on their written statements did not reflect their own words and were not approved by them. Id. at 58:2-59:10, 97:13-98:21. Mr. Donnelly openly admitted to being influenced by another teacher's insistence that he had been assaulted. Id. at 313:2-10. Video surveillance from the hallway bears out this statement, showing Mr. Donnelly's initial, relatively benign, physical reenactment being heavily influenced by another teacher's much more violent demonstration of a twisting motion. See Joint Ex. 28. Mr. Donnelly's written discipline referral and oral testimony differed, Joint Ex. 7 and Tr. 287:6-289:16, as did Laurie O'Donnell-Saturn's written statement. See Joint Ex. 15. Meanwhile, Z.B. and R. remained markedly consistent in their written and oral independent accounts of what transpired that day between Z.B. and Mr. Donnelly immediately after the incident and later during the hearing. See Joint Exs. 6, 13-14 & Tr. 50:3-51:1, 87:4-24.

a result thereof. The School District is thus required to conduct a second manifestation determination as ordered by the Hearing Officer.

2.      <u>Whether To Award Attorney's Fees</u>

We have the discretion to award reasonable attorney's fees to a prevailing party who is the parent of a child with a disability, or to the prevailing party who is a local educational agency, if a complaint is found to be frivolous, unreasonable, without foundation, or presented for an improper purpose, such as to harass, cause unnecessary delay, or intended to needlessly increase litigations costs. 20 U.S.C. § 1415(i)(3)(B). As Z.B., by and through his parents, is the prevailing party,[7] we will award reasonable attorney's fees.

**V.      <u>Conclusion</u>**

We find no error in the Hearing Officer's decision, order, or award. Although Z.B., by and through his parents, is the prevailing party, it would be inconsistent with the IDEA's purposes to enjoin the School District from engaging in any further disciplinary proceedings related to the underlying incident. Z.B. is entitled to a proper manifestation determination, an award of compensatory education, and attorney's fees, but not an injunction.

We will therefore deny the School District's motion for judgment on the administrative record and grant Z.B.'s motion for judgment on the administrative record. We will affirm the Hearing Officer's finding that the manifestation determination was deficient, order the School District to conduct a second manifestation determination, award Z.B. compensatory education for every day over ten days that he was excluded from school, and award attorney's fees. An appropriate Order follows.

---

[7] Although we have denied Z.B.'s request for equitable relief from further disciplinary proceedings, in all other respects he is the prevailing party.

BY THE COURT:

/S/ STEWART DALZELL, J.